**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph Otto BERKI a/k/a Joseph**
**Berkowitz, Defendant–Appellant.**

**No. 90–5183.**

United States Court of Appeals,
Eleventh Circuit.

July 23, 1991.

---

Theodore J. Sakowitz, Federal Public Defender, Alison M. Igoe, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Diane T. deRosset, Linda C. Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT, Chief Circuit Judge, DUBINA, Circuit Judge and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Joseph Otto Berki appeals his convictions in the United States District Court for the Southern District of Florida on one count of threatening to assault and two counts of threatening to murder a federal judge in violation of 18 U.S.C.A. section 115(a)(1)(B) (West Supp.1990). On appeal, he urges that the government failed to prove that he knew the intended victim of his threats was a federal judge, a necessary element of proof of the crimes alleged in the indictment. Because we find that the government was not required to make such a showing, we affirm the convictions.

I.

On August 10, 1989, a grand jury of the United States District Court for the Southern District of Florida returned an indictment against Berki for making threats against United States District Judge Lenore Nesbitt. Count I charged that he threatened to assault the judge with the intent to impede, intimidate, interfere with or retaliate against the judge on account of the performance of her official duties in violation of 18 U.S.C.A. section 115(a)(1)(B) and section 115(b)(1), (4) (West Supp.1990). In Counts II and III, he was accused of threatening to murder the same judge in an effort to impede or retaliate against her in the performance of her official duties in violation of the same statute. Berki was tried before a jury and convicted of all three counts. He was sentenced to concurrent 33–month terms of imprisonment on each count, and a three-year term of supervised release thereafter.

II.

Berki's troubles began when a California corporation filed suit against him for trademark infringement in the District Court for Southern District of Florida, Miami Division, on May 3, 1989. The California corporation, Den–Mat Corporation, was represented by Hugh Jaeger, a patent and trademark attorney, from Minneapolis, Minnesota. When efforts to persuade Berki to cease using the Den–Mat trademark failed, Jaeger associated the Miami law firm of Kimbrell & Haman as local counsel and directed Carol Fenello of that firm to file suit for trademark infringement against Berki in the federal district court in Miami. Thereafter, the case was assigned to Judge Nesbitt. Jaeger received several telephone calls from Berki soon after being served with a copy of the complaint. Jaeger told Berki that he could not discuss the pending litigation with him but that he would speak with Berki's attorney. During these calls, Berki sometimes used the name Berkowitz, and on other occasions, used other aliases. He promised to stop using the trademark if Jaeger would pay him for the expense of reprinting his sales literature.

Berki failed to cooperate with discovery efforts and after the time had expired for responsive pleadings, Jaeger, through his Miami counsel, moved for a default judgment. The motion was granted in July of 1989 by Judge Nesbitt and a default judgment was entered against Berki and Den–Mat Laboratories of Florida, his Miami business operation. A copy of the final judgment was posted on the door of Berki's business and he was also personally served with a copy of the final judgment.

Shortly after Judge Nesbitt heard argument on the default judgment, Jaeger retrieved a recorded telephone message from his answering machine by a person whose

voice he recognized as that of Berki. It appears from the record that Berki was extremely angry about the lawsuit. On August 2, 1989, Jaeger received another phone call from Berki in a bitter response to the default judgment. On the same day at approximately 10:25 a.m. Berki telephoned the chambers of Judge Nesbitt and spoke with her secretary, Joan O'Toole, and asked to speak with the judge. According to O'Toole, Berki was upset and extremely angry. When she informed Berki that he could not speak with the judge, Berki told her that the next person who tried to serve him with any legal documents or post notices on his property would "be dead, you know dead." R4–134. He also told the secretary that he was going to take the papers and "cram them up his ass,"[1] referring to Judge Nesbitt. R4–135. When O'Toole attempted to terminate the call, Berki told her that she had not heard the last of him. *Id.*

At approximately 11:00 a.m., on the same day, Berki called the law firm of Kimbrell & Haman and spoke with Maria Martinez, a receptionist in the office. Again Berki was extremely angry and belligerent. In an effort to identify the case Berki was referring to, she asked him to look at the signature at the bottom of the page of the court document, to which Berki responded, "Lenore Nesbitt." He then stated that he was going to "get a gun and shoot him or her." R4–88, 93.

Martinez was able to ascertain the name of the attorney handling the case and transferred the call to Fenello. Berki had identified himself to Martinez as Berkowitz, but when Fenello came on the line he said his name was George Myles. While talking to Fenello he threatened the judge again. This time Berki explained that he either operated or once operated a business that employed convicted felons. He related

that one of the men had been convicted of killing his mother and that he had just been released from prison. He told Fenello that if his friend found out about all of this the judge would "get it." R4–120, 123.

Later that day Joan O'Toole, Judge Nesbitt's secretary, alerted the United States Marshall's Service of the threat, which in turn, called the Federal Bureau of Investigation. During the same afternoon, the Kimbrell & Haman law firm also notified the FBI of the threats made against the judge. The next day, on August 3, 1989, after Berki admitted to making the phone calls, he was arrested at his home.

### III.

The essence of Berki's appeal is that the court erred in failing to charge the jury that knowledge of the identity of his victim as a federal judge was an essential element of the crime defined in 18 U.S.C.A. section 115(a)(1)(B) (West Supp.1990). Section 115(a)(1)(B) states in pertinent part:

(a)(1) Whoever—

(B) threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

*Id.*

The district court instructed the jury that, as a matter of law, it was not necessary for the government to prove that the defendant "knew" he was threatening a judge.[2] We note first that Berki did not

---

**1.** In each of the phone calls he made to the judge's chambers and to the law firm of Kimbrell & Haman on August 2, 1989, Berki referred to Judge Nesbitt as "him" and "her" interchangeably.

**2.** The district court informed the jury that:
It is not necessary to show that the defendant knew the person being threatened was at that

time a United States district judge carrying out an official duty, as long as it is established beyond a reasonable doubt that the victim was, in fact, a United States judge acting in the course of her duties, and the defendant willfully threatened to murder her. R5–208–09.

object to the court's jury charge. Failure to object to a jury instruction is reversible error only if it was so egregious as to constitute plain error. *United States v. Meester*, 762 F.2d 867 (11th Cir.1985). Berki argues that it is obvious from the plain language of the statute that threatening a federal judge is a specific intent crime, therefore the court's jury instruction and trial counsel's failure to object thereto rises to the level of plain error. Accepting Berki's plain error argument at face value, we conclude that 18 U.S.C.A. section 115(a)(1)(B) (West Supp.1990) is not a specific intent crime. In other words, it was not essential for Berki to know that he was threatening a federal judge to be held criminally liable for his conduct.

■ Berki also contends that section 115 should be viewed as an anti-obstruction of justice statute which specifically protects federal officers from being impeded in the performance of their official duties. To support this assertion, he relies on *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). In that case the Court discussed whether an analogous code section, 18 U.S.C.A. section 111, (West Supp.1990) should be treated as an anti-obstruction of justice statute, thereby requiring scienter or specific intent to harm a federal officer. Section 111 in part states that "[w]hoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties" is guilty of a federal crime. *Id.*

The Court rejected the claim that section 111 was an anti-obstruction of justice statute, thereby negating the requirement that the government prove that the defendant knew the victim was a federal officer. The Court's reasoning was based on the fact:

> [T]hat in order to effectuate the congressional purpose of according maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts, § 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer.

All the statute requires is an intent to assault, not an intent to assault a federal officer. A contrary conclusion would give insufficient protection to the agent enforcing an unpopular law, and none to the agent acting under cover.

*Id.* at 684, 95 S.Ct. at 1264, 43 L.Ed.2d at 552–53. The Court found that the statute was not enacted to protect against obstruction of justice, but to protect federal officers in carrying out their duties. Interpreting section 111 as a non-strict liability crime would defeat the purpose behind the statute. Berki's reliance on *Feola* is misplaced.

Since the language in 18 U.S.C.A. section 111 (West Supp.1990) is almost identical to that of the code section in issue here, we follow the same reasoning as the Court in *Feola*. The statute was not enacted to prevent obstructions of justice, but solely to "give [sufficient] protection to the [judges] enforcing an unpopular law." *Feola*, 420 U.S. at 684, 95 S.Ct. at 1264, 43 L.Ed.2d at 553. Therefore, we hold as a matter of law that a defendant does not have to know that the target of his threats was a judge in order to sustain a conviction under section 115.

■ Berki also asserts that there was insufficient evidence to find that he knowingly and intentionally threatened to assault and murder a United States district judge (Counts I, II and III). The standard of review is whether the evidence adduced at trial was sufficient to find the defendant guilty beyond a reasonable doubt considered in the light most favorable to the government. " 'It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.' " *United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir.1984) (citations omitted), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984). Our independent review of the record finds sufficient evidence to support the jury verdict finding Berki guilty beyond a reasonable doubt of threat-

ening to assault and murder Judge Nesbitt while she was in the performance of her official duties.

For the foregoing reasons we AFFIRM the judgments of conviction.