[No. 20834-2-II. Division Two. June 12, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. VERYL EDWARD KNOWLES, *Appellant*.

*A. Laurens Knappert* of *Law Office of Wecker Hunko*, for appellant (appointed counsel for appeal).

*Russell D. Hauge, Prosecuting Attorney*, and *Pamela B. Loginsky, Deputy*, for respondent.

HUNT, J. — Veryl Edward Knowles challenges his conviction for intimidating a judge under RCW 9A.72.160, arguing that the statute is unconstitutionally overbroad. Finding that it is not, we affirm.

## FACTS

Between December 1995 and March 1996, Veryl Edward Knowles appeared in court as a defendant in various criminal matters in Kitsap County Superior Court before Judges Karen B. Conoley, Leonard W. Kruse, M. Karlynn Haberly, and Leonard W. Costello. During those proceedings, he sent letters, filed documents, and made statements to each judge, stating his intent to file liens on the judges' properties if they did not release him from custody and/or release his property; he warned that the judges would be subject to civil and/or criminal sanctions if they did not comply; and he claimed sovereign and diplomatic immunity from prosecution.

On April 8, 1996, the State charged Knowles by amended information with four counts of intimidating a judge, in violation of RCW 9A.72.160 and RCW 9A.04.110(25)(d) and (j), and one count of barratry, in violation of RCW 9.12.010. At trial, Knowles moved to dismiss, arguing that the intimidating statute is unconstitutionally overbroad. The trial court denied the motion. The jury convicted Knowles on all five counts.

On appeal, Knowles does not argue that his acts did not violate the statute. Rather, he argues that the statute is unconstitutionally overbroad and violates the free speech

protections of the first amendment to the United States Constitution.[1]

## ANALYSIS

RCW 9A.72.160 provides:

(1) A person is guilty of intimidating a judge if a person directs a threat to a judge because of a ruling or decision of the judge in any official proceeding, or if by use of a threat directed to a judge, a person attempts to influence a ruling or decision of the judge in any official proceeding.

(2) "Threat" as used in this section means:

(a) To communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time; or

(b) Threats as defined in RCW 9A.04.110(25).

The State proceeded under subsection (2)(b), charging Knowles with violations of RCW 9A.04.110(25)(d) and (j). Those subsections provide:

(25) "Threat" means to communicate, directly or indirectly the intent:

. . . .

(d) To accuse any person of a crime or cause criminal charges to be instituted against any person; or

. . . .

(j) To do any other act which is intended to harm substantially the person threatened or another with respect to his health, safety, business, financial condition, or personal relationships . . . .

RCW 9A.04.110(25).

---

[1]Knowles does not argue that the statute is overbroad based upon the Washington State Constitution; therefore our analysis is limited to the federal Constitution. State constitutional analysis must be raised and briefed independently. *See In re Personal Restraint of Mota*, 114 Wn.2d 465, 788 P.2d 538 (1990).

 "Overbreadth analysis is intended to ensure that legislative enactments do not prohibit constitutionally protected conduct, such as free speech." *City of Seattle v. Ivan*, 71 Wn. App. 145, 149, 856 P.2d 1116 (1993) (citing *City of Tacoma v. Luvene*, 118 Wn.2d 826, 827 P.2d 1374 (1992)). "A criminal statute that 'sweeps constitutionally protected free speech activities within its prohibitions' may be overbroad and thus violate the First Amendment." *State v. Stephenson*, 89 Wn. App. 794, 800, 950 P.2d 38 (1998) (quoting *City of Seattle v. Abercrombie*, 85 Wn. App. 393, 397, 945 P.2d 1132, *review denied*, 133 Wn.2d 1005 (1997) (citing *Thornhill v. Alabama*, 310 U.S. 88, 97, 60 S. Ct. 736, 741, 84 L. Ed. 1093 (1940))). But, "[a]pplication of the overbreadth doctrine is strong medicine"; courts employ it "sparingly and only as a last resort," upholding the constitutionality of statutes if possible. *State v. Halstien*, 122 Wn.2d 109, 122-23, 857 P.2d 270 (1993) (citing *O'Day v. King County*, 109 Wn.2d 796, 804, 749 P.2d 142 (1988); *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S. Ct. 2908, 2916, 37 L. Ed. 2d 830 (1973)); *Luvene*, 118 Wn.2d at 839-40.

Knowles contends the judge intimidation statute is unconstitutionally overbroad because it criminalizes a substantial amount of constitutionally protected speech or conduct. In considering an overbreadth challenge, we consider (1) whether the challenged statute reaches constitutionally protected speech or expression and (2) whether it proscribes a real and substantial amount of speech. "If the answer to those two questions is yes, [the court] must strike the statute as overbroad unless the regulation of protected speech is constitutionally permissible or it is possible to limit the statute's construction so that it does not unconstitutionally interfere with protected speech." *Stephenson*, 89 Wn. App. at 800 (citing *City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989) (citing *City of Houston v. Hill*, 482 U.S. 451, 458, 107 S. Ct. 2502, 2508, 96 L. Ed. 2d 398 (1987))).

In *Stephenson*, we recently analyzed the overbreadth

doctrine relative to the public servant intimidation statute, RCW 9A.76.180.[2] The public servant statute is similar to the judge intimidation statute and uses the same definitions of "threat" contained in RCW 9A.04.110(25). In *Stephenson*, the State charged the defendant under subsection (j). We determined that the definition of "threat," in the context of intimidating a public servant, was not unconstitutionally overbroad. The *Stephenson* analysis applies nearly identically to this case, except for two points: (1) Knowles also challenges the definition in subsection (d); and (2) the judge intimidation statute also applies to threats made in retaliation for a prior ruling of the judge, whereas the public servant statute applies only to threats made to influence future official acts.

## A. Constitutionally Protected Speech

■ ■ The First Amendment generally prohibits government interference with speech or expressive conduct. *Halstien*, 122 Wn.2d at 121. But certain types of speech, such as "fighting words" and "true threats," are not protected. A "true threat" is a statement made "in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of [another individual]." *United States v. Khorrami*, 895 F.2d 1186, 1192 (7th Cir. 1990) (quoting *United States v. Hoffman*, 806 F.2d 703, 707 (7th Cir. 1986)) (alteration in original); *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265-66 (9th Cir. 1990).

---

[2]RCW 9A.76.180 provides, in part:

(1) A person is guilty of intimidating a public servant if, by use of a threat, he attempts to influence a public servant's vote, opinion, decision, or other official action as a public servant.

. . . .

(3) "Threat" as used in this section means

(a) to communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time; or

(b) threats as defined in RCW 9A.04.110(25).

Knowles' threats were not "true threats" of bodily harm. Rather he threatened the judges with financial or personal harm, including the filing of criminal charges, but did not threaten their physical safety. Similarly, in *Stephenson*, the threats were of a financial and business nature and, therefore, not "true threats." *Stephenson*, 89 Wn. App. at 801. There we ruled: "Consequently, the definition of threat in RCW 9A.04.110(25)(j) encompasses both protected and unprotected speech, and Stephenson's [threat] was entitled to some First Amendment protection." *Id.* (citing *Khorrami*, 895 F.2d at 1192).

Similarly, the definition of "threat" in RCW 9A.04-.110(25)(d) and (j) encompasses both protected and unprotected speech. Knowles' communications were therefore entitled to some First Amendment protection. *Stephenson*, 89 Wn. App. at 801.

## B. Substantial Amount of Speech

"The extent to which a statute 'chills or burdens constitutionally protected conduct' turns on whether the statute's prohibition against protected speech or conduct is 'real and substantial' compared to its plainly legitimate sweep." *Id.* (quoting *Halstien*, 122 Wn.2d at 123; *Luvene*, 118 Wn.2d at 841). In *Stephenson* we determined that RCW 9A.04.110(25)(j) ("harm"), did burden a "real and substantial" amount of protected speech. Similarly, subsection (d) ("threats to institute criminal charges") potentially burdens a substantial amount of protected speech because it prohibits "a wide range of communications beyond mere fighting words and other non-protected speech." *Ivan*, 71 Wn. App. at 151. But RCW 9A.72.160 criminalizes such threatening speech only if used to attempt to influence a judge's ruling or in retaliation for a past ruling.

## C. Constitutionally Permissible Prohibition

In some circumstances, the government may regulate

protected speech. *Huff*, 111 Wn.2d at 926. "[E]ven protected speech may be regulated by view-point neutral, reasonable time, place and manner restrictions." *Ivan*, 71 Wn. App. at 152 (citations omitted).

### 1. Public or Private Forum

■ First, the extent of permissible regulation depends on whether the speech takes place in a public or a private forum. *Huff*, 111 Wn.2d at 927. "[T]he First Amendment affords more protection to speech in a public forum, a place traditionally devoted to assembly and debate, and to channels of communication used by the public at large for assembly and speech." *Stephenson*, 89 Wn. App. at 802 (citing *Ivan*, 71 Wn. App. at 152). In *Ivan*, Division One determined Seattle's coercion ordinance, with a threat definition virtually identical to the definition here, was nonpublic "because of the private nature of the proscribed behavior; the statute contemplates private communications between individuals." *Ivan*, 71 Wn. App. at 152. Similarly, in *Stephenson*, we determined that the public official statute addressed private communications.

> The sender of messages designed to frighten public officers into making official decisions based upon fears and concerns for their personal welfare, rather than upon the law or appropriate considerations of public benefit, generally will not disseminate the messages using forums traditionally used by the public for assembly, speech, or debate. Thus, we apply the standards for private speech.

*Stephenson*, 89 Wn. App. at 802-03.

■ Analogous to the statute in *Stephenson*, the statute at issue here addresses threats generally disseminated through private communications, designed to retaliate against or to influence judges to make certain official decisions. Therefore we apply to RCW 9A.04.110(25)(d) and (j) the constitutional standard for private speech.

### 2. Reasonable and Viewpoint-Neutral Distinctions

■ Speech in a nonpublic forum may be regulated if

" 'the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.' " *City of Seattle v. Eze*, 111 Wn.2d 22, 32, 759 P.2d 366, 78 A.L.R. 4TH 1115 (1988) (quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 806, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985)). "In determining the reasonableness of a regulation, we consider its relation to the overall problem the government seeks to correct." *Stephenson*, 89 Wn. App. at 803 (citing *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 127, 937 P.2d 154, 943 P.2d 1358 (1997), *cert. denied*, 522 U.S. 1077, 118 S. Ct. 856, 139 L. Ed. 2d 755 (1998)).

a. *Purpose of the Statute*

 "[T]he legislative intent behind RCW 9A.72.160(1) is to protect judges from the threat of harm [ ] by retaliatory acts because of past official actions . . . ." *State v. Hansen*, 122 Wn.2d 712, 717, 862 P.2d 117 (1993). Additionally, in *Stephenson*, we determined that the intent behind the public official statute is: (1) to "protect[ ] public servants from threats of substantial harm based upon the discharge of their official duties"; (2) to "protect[ ] the public's interest in a fair and independent decision-making process"; and (3) to help "maintain public confidence in democratic institutions" by "deterring the intimidation and threats that lead to corrupt decision making . . . ." *Stephenson*, 89 Wn. App. at 803-04. These three interests similarly apply to the judge intimidation statute. The purposes of the statute are "compelling in a democracy." *Stephenson*, 89 Wn. App. at 804 (citing *City of Hoquiam v. Public Employment Relations Comm'n*, 97 Wn.2d 481, 488, 646 P.2d 129 (1982); *In re Stockwell*, 28 Wn. App. 295, 299, 622 P.2d 910 (1981)).

b. *Reasonableness of Regulation*

Knowles argues that *Ivan* is controlling. There, the court found that a City of Seattle coercion ordinance was unconstitutionally overbroad. The ordinance, SEATTLE MUNICIPAL CODE (SMC) 12A.06.090 (1973), criminalized a threat to *any person* if that threat "induces a person to engage in

conduct which the latter has a legal right to abstain from, or to abstain from conduct which he has a legal right to engage in." SMC 12A.06.090(A). The ordinance then listed ten definitions of threat, all closely mirroring those defined in RCW 9A.04.110(25). SMC 12.A.08.050(L). The court determined the ordinance was overbroad, stating:

> The Seattle ordinance, however, prohibits such a wide range of speech that it is impossible to find its proscriptions reasonable. As pointed out by Ivan, SMC 12A.08.050(L)(4) could be applied to proscribe prosecutors from plea-bargaining. Subsections (5) and (6) could impinge on freedom of the press to release information. Subsection (7) could discourage a witness from testifying. Subsection (9) could chill the ability of groups to engage in boycotts and collective bargaining.
>
> This sample of prohibited behavior gives some indication of the wide scope of proscribed behavior. These situations are not reasonably distinguishable from other instances of protected speech and cannot be constitutionally regulated by the Seattle ordinance.

*Ivan*, 71 Wn. App. at 152-53.

However, as *Stephenson* points out, the Seattle ordinance in *Ivan* was distinguishable from the public servant statute; it is similarly distinguishable from the statute at issue here. First, both statutes protect "a more significant governmental interest than the coercion ordinance in *Ivan*." *Stephenson*, 89 Wn. App. at 806. The statute in *Ivan* covered threats to any person, while the statute here applies only to threats directed toward a judge, to influence or to retaliate for a particular judicial act. The statute is closely related to significant state interests: "The public's interest in open and fair government decision making provides a far more compelling justification for an incidental limitation of protected speech." *Id.*

Second, the *Ivan* court had before it all the definitions of "threat" contained in the challenged ordinance. Looking at the multiplicity of ways in which one might convey a threat,

the *Ivan* court concluded that . . . . it was not narrowly tailored to address the City's interest "in protecting its citizens from extortion-like threats."

*Id.* (quoting *Ivan*, 71 Wn. App. at 153-54).

█ █ Finally, *Stephenson* noted that "the Seattle ordinance criminalized any threatening communications that happened to induce certain responses. But a critical element of the statute here is the requirement that the defendant 'attempt to influence' the targeted public servant's behavior. Threatening words or behavior by themselves do not violate the statute." *Id.* at 807 (quoting *Ivan*, 71 Wn. App. at 148, 154).

Similarly, RCW 9A.72.160 protects a more significant government interest than does the Seattle ordinance. The statute is more narrowly tailored because it applies only to judges and criminalizes only threats made because of or to influence official acts. Only two subsections of the "threat" definition are before us. Threatening words alone are not criminalized by RCW 9A.72.160. Rather, the threats must be an attempt to retaliate for an official decision or to influence future decision making.

We also noted in *Stephenson* that *Ivan* "had no criticism of that portion of the ordinance" similar to RCW 9A.04.110(25)(j). *Stephenson*, 89 Wn. App. at 807. However, *Ivan* did criticize a portion of the Seattle ordinance similar to subsection (d) of RCW 9A.04.110(25), the criminal prosecution section. But *Ivan*'s criticism, that the section could "proscribe prosecutors from plea bargaining," does not apply to RCW 9A.72.160. *Ivan*, 71 Wn. App. at 153. It is highly unlikely that a prosecutor threatening a judge with criminal prosecution would be doing so *because of* a prior ruling or act of the judge, or in order *to influence* a future ruling, rather than because of criminal conduct allegedly committed by the judge.

We circumscribed our conclusion in *Stephenson*, that the public servant statute is not overbroad, by stating that the

statute "prohibits only those threats related to future decision making and to substantial interests. It does not encompass threats of harm based on past decisions." *Stephenson*, 89 Wn. App. at 804.

In contrast, the judge intimidation statute does encompass threats related to *past* decision making. But *Stephenson* neither addressed nor held that a statute punishing threats relating to past acts is always overbroad. If the statute is narrowly tailored, it will be held constitutional. RCW 9A.72.160 applies only to judges.[3] It proscribes only threats of "substantial harm based upon the discharge of [a judge's] official duties." *Stephenson*, 89 Wn. App. at 803 (citing *Hansen*, 122 Wn.2d at 716-18).

Additionally, a major purpose of the statute is to protect judges from retaliatory acts when they enforce " 'unpopular laws.' " *Hansen*, 122 Wn.2d at 717 n.1, 718 (citing *United States v. Berki*, 936 F.2d 529, 532 (11th Cir. 1991) (quoting *United States v. Feola*, 420 U.S. 671, 684, 95 S. Ct. 1255, 43 L. Ed. 2d 541 (1975))). By requiring that the criminalized threat be made *because of* a prior official act, the statute is drawn sufficiently narrowly to meet this purpose.

Finally, Knowles argues that the statute criminalizes many protected acts, such as business competition with a judge's spouse. It is doubtful that such acts would actually fall under the statute, unless done to retaliate against or to influence a ruling. Regardless, there are other protected acts and communications that may fall under the statute. For example, threatening to run for office because of displeasure over a judge's ruling on a case; threatening to impeach a judge for the same reason; or threatening disciplinary action. But we addressed and rejected a similar challenge in *Stephenson*:

> Stephenson asserts that the statute sweeps too broadly and could encompass even a threat to file and run against a public official to coerce a decision to the threatener's liking. Although

---

[3]RCW 9A.72.160 does not apply to the general public, as does SMC 12A.06.090, or to any non-judicial public official, as does RCW 9A.72.180.

it is possible to conceive of circumstances in which application of the statute would be unreasonable, that alone will not render it unconstitutional. *Members of City Council v. Taxpayers [for Vincent]*, 466 U.S. 789, 800, 104 S. Ct. 2118, 2126, 80 L. Ed. 2d 772 (1984). Unless there is a *realistic danger* that the statute will significantly compromise recognized First Amendment protections of parties not before the court, we will not declare it facially invalid on overbreadth grounds. *Taxpayers*, 466 U.S. at 801. We do not see that danger here.

*Stephenson*, 89 Wn. App. at 804 (emphasis added).

In *Taxpayers*, the Court considered only *conceivable circumstances* that are a *realistic danger* to First Amendment protections. *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984). It is not a *realistic danger* that a prosecutor would bring charges against a person for threatening to run against a judge because of a ruling.[4]

## CONCLUSION

*Stephenson* is dispositive on the majority of the issues raised by Knowles' challenge. Following *Stephenson*, subsection (j) of RCW 9A.04.110(25) is not overbroad as it applies to threats made to influence future official acts of a judge. Subsection (d) is constitutional as well, because it proscribes only specific threats of a serious and substantial nature; although it proscribes threats for past official acts of a judge, considering the purpose of the statute and the narrow class of persons to whom it applies, this portion of the statute also is not unconstitutionally overbroad.

Accordingly, like the public servant intimidation statute, the judge intimidation statute is narrowly tailored to meet its compelling government purpose. We hold that it is therefore not overbroad.

---

[4]*See also State v. Edwards*, 84 Wn. App. 5, 17, 924 P.2d 397 (1996), *review denied*, 131 Wn.2d 1016 (1997) ("threat" definition in RCW 9A.04.110(25) punished a threat communicating an *intent to damage or injure*); "A person who says he will work to see that a building is demolished is merely *advocating*; he is not communicating an *intent to injure*." *Id.* at 18 n.12 (emphasis added) (citing *State v. Young*, 83 Wn.2d 937, 941-42, 523 P.2d 934 (1974)).

We affirm.

SEINFELD and ARMSTRONG, JJ., concur.

Review denied at 136 Wn.2d 1029 (1998).