IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31483-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TIMOTHY A. HAYS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J.—Timothy Allen Hays appeals his conviction for intimidating municipal court judge Michelle Szambelan. Mr. Hays knew Judge Szambelan from when he previously stood trial in her court on an obstruction charge and pleaded guilty in her court to domestic violence charges. Angered over her evidentiary ruling in his obstruction trial, he eventually confronted her in the courthouse. He now challenges the admission of his prior domestic violence convictions, the wording of a limiting instruction, and the effectiveness of his attorney in his intimidation trial. We find no reversible error, and affirm.

FACTS

Mr. Hays appeared before Judge Szambelan as a defendant in three separate cases involving charges of obstructing a law enforcement officer, domestic violence assault, and violating a domestic violence no-contact order. She oversaw a trial in

which a jury found him guilty of the obstruction charge. She later accepted his guilty pleas to the domestic violence charges. In each proceeding before Judge Szambelan, Mr. Hays conducted himself appropriately and expressed no displeasure, whether through allocutions, appeals, or affidavits of prejudice, regarding how she handled his obstruction trial.

On a Friday afternoon in September 2012, Mr. Hays drank alcohol and visited Judge Szambelan at her chambers. Appearing red faced and intoxicated, he said in a mean, growly voice "'I want to talk to you'" and "'I'm very angry.'" Report of Proceedings (RP) at 58-59. He repeatedly said he was very angry and elaborated she ruined his life by excluding certain evidence in his obstruction trial. Then, standing uncomfortably close to her, he said in a slow, measured, and menacing voice "'I'm going to cut you down.'" RP at 60. Judge Szambelan asked Mr. Hays to leave. When he began to reach his hand into her chambers, she shut the door. Other court personnel viewing this incident called security, who arrested Mr. Hays outside the courthouse.

The State charged Mr. Hays with intimidating a judge and moved in limine to admit evidence of his prior convictions under ER 404(b). Over Mr. Hays's objection, the trial court granted the motion after identifying several alternative purposes for admitting the convictions. The court partly reasoned "knowledge of these crimes and their underlying facts may assist the jury in determining whether Hays' statements to Judge Szambelan could reasonably be viewed as 'true threats' by Hays as he made them and interpreted as such by Judge Szambelan as she heard them." Clerk's Papers (CP) at

2

58. Additionally, the court concluded the probative value of Mr. Hays's prior convictions outweighed their prejudicial effect.

Upon the State's request, the trial court gave the jury a limiting instruction regarding Mr. Hays's prior convictions:

> Evidence has been presented in this trial that the defendant has been convicted of certain crimes. You may consider this evidence only for the purpose of giving possible context to the events described in this case, for evaluating possible motives of the defendant, to determine whether the alleged threats were true threats, and to determine whether a reasonable person would have felt threatened under the circumstances presented in evidence. You must not consider the evidence for any other purpose.

CP at 74; RP at 194. The court gave a similar precautionary instruction before Judge Szambelan testified about the convictions. Defense counsel did not object to the wording of these instructions.

Judge Szambelan testified she became a judge after a special panel recommended her, the mayor appointed her, the city council confirmed her, and the voters retained her in reelection. A colleague testified Judge Szambelan was generally empathetic, even-tempered, and not prone to overreaction on the bench. Partly relying on this evidence, the State argued a reasonable person in Mr. Hays's position would foresee Judge Szambelan would interpret his statement "I'm going to cut you down" as a serious expression of his intent to injure or kill her. Defense counsel did not object when the State elicited or argued from this evidence. Mr. Hays testified he meant his statement as a threat to destroy Judge Szambelan in "her career, her credibility, and her character." RP at 163, 164. The jury found him guilty as charged. He appealed.

3

No. 31483-9-III
*State v. Hays*

ANALYSIS

A. Prior Convictions

The issue is whether the trial court erred by admitting evidence of Mr. Hays's

prior domestic violence convictions under ER 404(b). Mr. Hays contends no reasonable

judge would have ruled as the trial court did in admitting his convictions. We review

evidence admission under ER 404(b) for abuse of discretion where, as here, the trial

court interpreted the rule correctly. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d

119 (2003). A trial court abuses its discretion in admitting evidence under ER 404(b) if

"no reasonable judge would have ruled as the trial court did."[1] *State v. Mason*, 160

Wn.2d 910, 934, 162 P.3d 396 (2007). ER 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the
> character of a person in order to show action in conformity therewith. It
> may, however, be admissible for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity, or absence of
> mistake or accident.

To admit evidence of a prior conviction under ER 404(b), a trial court must "(1)

find by a preponderance of the evidence that the misconduct occurred, (2) identify the

purpose for which the evidence is sought to be introduced, (3) determine whether the

evidence is relevant to prove an element of the crime charged, and (4) weigh the

---

[1] More generally, a trial court abuses its discretion if its decision is "manifestly
unreasonable," based on "untenable grounds," or made for "untenable reasons." *State
ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *see also State v.
Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) ("A decision is based on untenable
grounds or made for untenable reasons if it rests on facts unsupported in the record or
was reached by applying the wrong legal standard. A decision is manifestly
unreasonable if the court, despite applying the correct legal standard to the supported
facts, adopts a view that no reasonable person would take, and arrives at a decision

4

probative value against the prejudicial effect." *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002) (citing *State v. Lough*, 125 Wn.2d 847, 853, 889 P.2d 487 (1995)). Evidence is relevant if it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

Mr. Hays argues his domestic violence convictions did not serve the stated purposes and were not relevant to prove the identified elements. The elements of intimidating a judge include "direct[ing] a threat to a judge because of a ruling or decision of the judge in any official proceeding." RCW 9A.72.160(1). A threat means "[t]o communicate, directly or indirectly the intent . . . [t]o cause bodily injury in the future to the person threatened or to any other person." RCW 9A.04.110(28)(a); *see* RCW 9A.72.160(2)(b).

But the threat must be a "true threat."[2] "'A 'true threat' is a statement made 'in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of [another individual].'" *State v. Williams*, 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001) (omission and alteration in original) (quoting *State v. Knowles*, 91 Wn. App. 367, 373, 957 P.2d 797 (1998)); *see Virginia v. Black*,

---

outside the range of acceptable choices." (citations omitted) (internal quotation marks omitted)).

[2] The First Amendment, by incorporation into the Fourteenth Amendment due process clause, bars a state from "abridging the freedom of speech." U.S. CONST. amend. I; *see Gitlow v. New York*, 268 U.S. 652, 666, 45 S. Ct. 625, 69 L. Ed. 1138 (1925). But a state may criminalize a "true threat." *Virginia v. Black*, 538 U.S. 343, 359,

538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003). The threat must be "a serious one, not uttered in jest, idle talk, or political argument." *State v. Hansen*, 122 Wn.2d 712, 718 n.2, 862 P.2d 117 (1993) (internal quotation marks omitted); *see Black*, 538 U.S. at 359. However, "[t]he speaker need not actually intend to carry out the threat." *Black*, 538 U.S. at 359-60; *see State v. Kilburn*, 151 Wn.2d 36, 48, 84 P.3d 1215 (2004). Additionally, "the nature of a threat depends on all the facts and circumstances, [not] . . . a literal translation of the words spoken." *State v. C.G.*, 150 Wn.2d 604, 611, 80 P.3d 594 (2003).

The trial court said Mr. Hays's domestic violence convictions were admissible to show his statement "I'm going to cut you down" was a true threat directed to Judge Szambelan. Specifically, the court reasoned the convictions were relevant to show a reasonable person in his position would foresee she would interpret his statement as a serious expression of his intent to injure or kill her. We cannot say no reasonable judge would have ruled as the trial court did. He testified he meant his statement as a threat to destroy her career and reputation, and not to injure or kill her. The convictions show what Mr. Hays knew: Judge Szambelan was aware he had a history of transgressing personal security because she accepted his guilty pleas to charges of domestic violence assault and violating a domestic violence no-contact order. By emphasizing his knowledge of her awareness, the convictions tended to make it more probable that a reasonable person in his position would foresee she would interpret his statement as a serious expression of his intent to injure or kill her, and not just to destroy her career

---

123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) (citing *Watts v. United States*, 394 U.S. 705,

6

and reputation. Through this lens, the trial court could reasonably conclude the probative value of the convictions outweighs their prejudicial effect.

Therefore, we hold the trial court did not abuse its discretion and did not err in admitting evidence of Mr. Hays's prior domestic violence convictions under ER 404(b). Because the main rationale withstands scrutiny, we do not consider the alternative purposes for admitting the convictions.

## B. Limiting Instruction

The issue is whether the trial court misstated the law and unconstitutionally commented on the evidence while instructing the jury regarding Mr. Hays's prior convictions. First, Mr. Hays contends the limiting instruction misstated the law by allowing the jury to consider his convictions in determining whether a reasonable person in Judge Szambelan's position would have felt threatened by his statement. Second, Mr. Hays contends the limiting instruction unconstitutionally commented on the evidence by suggesting it was important for the jury to consider whether a reasonable person in Judge Szambelan's position would have felt threatened by his statement.

Mr. Hays waived his first contention because he did not object to the limiting instruction before the trial court read it to the jury. *See* RAP 2.5(a); CrR 6.15(c). However, Mr. Hays may raise his second contention for the first time on appeal because it concerns a manifest constitutional error. *See* RAP 2.5(a)(3); *State v. Lampshire*, 74 Wn.2d 888, 893, 447 P.2d 727 (1968); *State v. Levy*, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006).

708, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969)).

We review an alleged instructional error de novo in the context of all instructions as a whole. *State v. Brett*, 126 Wn.2d 136, 171, 892 P.2d 29 (1995); *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993). A trial court cannot comment on factual matters when instructing the jury. CONST. art. IV, § 16. "A statement by the court constitutes a comment on the evidence if the court's attitude toward the merits of the case or the court's evaluation relative to the disputed issue is inferable from the statement." *State v. Lane*, 125 Wn.2d 825, 838, 889 P.2d 929 (1995).

The trial court instructed the jury it could consider Mr. Hays's prior convictions "to determine whether a reasonable person would have felt threatened" by his statement "'I'm going to cut you down.'" CP at 74; RP at 60, 194. He argues the limiting instruction unconstitutionally commented on the evidence because it suggested the jury should assess the statement directly from Judge Szambelan's perspective, whereas applicable law required the jury to assess the statement indirectly from Mr. Hays's perception of how she would view the statement. But the instruction did not imply the court's attitude toward or evaluation of the case one way or another. The instruction highlighted an irrelevant issue left open for jury resolution. While highlighting an irrelevant issue is improper, Mr. Hays waived that error claim as discussed above. Therefore, we conclude the trial court did not unconstitutionally comment on the evidence while instructing the jury regarding Mr. Hays's prior convictions.

C.  Assistance of Counsel

The issue is whether Mr. Hays received ineffective assistance of counsel. He contends defense counsel did not object to the improper limiting instruction,

8

inadmissible character evidence bolstering Judge Szambelan's credibility, or prosecutorial misconduct arguing from the inadmissible evidence.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 & n.14, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970); *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003). To prove counsel was ineffective, the defendant must show "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to show either element defeats the claim. *Id.* at 697.

Deficient performance occurs if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This standard requires "reasonableness under prevailing professional norms" and "in light of all the circumstances." *Id.* at 688, 690. The defendant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To do so, the defendant must show counsel's performance cannot be explained as a sound defense strategy. *Id.*

Prejudice occurs if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability of a different result exists where counsel's deficient performance "undermine[s] confidence in the outcome." *Id.* The defendant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Instead, the defendant "has . . . the burden of showing that the

9

No. 31483-9-III
*State v. Hays*

decision reached would reasonably likely have been different absent the errors." *Id.* at 696. This standard requires evaluating the totality of the record. *Id.* at 695.

Mr. Hays argues defense counsel acceded to errors introducing irrelevant matters into the jury's determination of his guilt. But Mr. Hays fails to show how removing those irrelevant matters might have produced a different trial result. Upon the totality of the record, it appears the trial result would have been the same anyway. Defense counsel's performance does not undermine our confidence, and therefore, does not raise a reasonable probability of a different outcome. Mr. Hays cannot show prejudice. It follows that Mr. Hays did not receive ineffective assistance of counsel.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, Acting Assistant C.J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, J.

10