FILED
COURT OF APPEALS
DIVISION II

2014 AUG -5 AM 10: 41

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45545-5-II |
| Respondent, | |
| v. | |
| JESTIN SCOTT YOKEL, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury found Jestin Yokel guilty of felony harassment, fourth degree assault, and violation of a post-conviction order restricting contact. He challenges his conviction for felony harassment, arguing that insufficient evidence supports the jury's verdict because the State failed to prove that the victim reasonably believed the threat to kill. We hold that there was sufficient evidence to support the jury's verdict, and we affirm.

## FACTS

Yokel and Heather Hayes had an on-again-off-again relationship, and have a son together. At the time of the incident, Yokel and Hayes were again romantically involved. Hayes had been in a long-term relationship with Brad Sigmund that predated her relationship with Yokel. Hayes and Sigmund have two children together. All three children live with Hayes. Sigmund was a protected party under a no-contact order against Yokel. The order stemmed from an altercation where Yokel stabbed Sigmund in the leg.

On the evening of May 2, 2013, the incident date, Hayes and Yokel had a disagreement at Yokel's house. Hayes left the house with their son.

Around the same time, Sigmund left his apartment with his friend Jess Turner.[1] As Sigmund and Turner walked to Turner's car, they spotted Hayes walking quickly on the other side of the street with her son. Sigmund and Turner crossed the street to greet her.

Yokel had followed Hayes; after catching up with her, he attempted to take their son. Yokel then confronted Sigmund, asked him if he wanted to fight, and tried to hit him. Sigmund blocked the first two punches, but the third punch connected, hitting Sigmund above the eye and injuring him. Yokel also confronted Turner and asked him if he wanted to fight before turning to Sigmund and telling him, "If you come around my son again I'll kill you." Report of Proceedings (Oct. 15, 2013) at 73.

After the assault, Sigmund returned home and called the police. Four days later, on May 6, a police officer arrested Yokel at his home.

The State charged Yokel with felony harassment, violation of a post-conviction order restricting contact, fourth degree assault, two counts of violation of a pre-conviction order restricting contact, and witness tampering.

At trial, Sigmund testified that Yokel had pointed at him and said, "If you come around my son again I'll kill you." RP (Oct. 15, 2013) at 73. When the prosecution asked Sigmund if he was concerned that Yokel would carry out his threat to kill, Sigmund answered, "Yes." RP (Oct. 15, 2013) at 74. When asked why he was concerned that Yokel would carry out his threat to kill, Sigmund answered, "Because we have had an altercation in the past in which it led to me getting stabbed." RP (Oct. 15, 2013) at 74. When asked if there were any other reasons why he should be concerned about Yokel carrying out the threat, Sigmund said that both of his children

---

[1] Yokel and Sigmund's homes are within a few blocks of each other.

and Yokel's son all lived with Hayes, and that he (Sigmund) would be in contact with Yokel's son when he visited his children. Both Turner and Hayes testified that Yokel threatened to kill Sigmund if he came into contact with Yokel's son.

A jury found Yokel guilty of felony harassment, violation of a post-conviction order, and fourth degree assault. Yokel appeals.

## ANALYSIS

Yokel appeals only his conviction for felony harassment. He argues that the evidence was insufficient to prove that Sigmund had a reasonable fear that Yokel would carry out his threat to kill. We disagree.

When a defendant appeals the sufficiency of the evidence, we view the evidence in the light most favorable to the State and determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences from the evidence in favor of the State. *Salinas*, 119 Wn.2d at 201. Claims of insufficient evidence admit the State's evidence as true. *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are deemed equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Lastly, we defer to the trier of fact on issues of witness credibility and resolving conflicting testimony. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308 (1989).

To convict Yokel of felony harassment, the State was required to prove that he knowingly threatened to kill another without lawful authority, and that the victim had a reasonable fear that the threat to kill would be carried out. RCW 9A.46.020(1), (2)(b); *State v. Mills*, 154 Wn.2d 1, 11-12, 109 P.3d 415 (2005). Additionally, the threat must be a "true threat"

3

in order to be charged under the statute; true threats are statements "made 'in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of [another individual].'" *State v. Williams*, 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001) (quoting *State v. Knowles*, 91 Wn. App. 367, 373, 957 P.2d 797 (1998). It is not required that the speaker actually intend to carry out the threat, only that "a reasonable speaker would foresee that the threat would be considered serious." *State v. Schaler*, 169 Wn.2d 274, 283, 236 P.3d 858 (2010).

Yokel argues there was insufficient evidence to show that Sigmund reasonably feared that the threat would be carried out because his testimony indicated that he was "more irritated than afraid" of the threat, and because he did not mention the threat when he initially called the police.

Yokel asserts that Sigmund was more irritated than afraid because when he was asked, "[I]n your mind, is there a possibility that you would have [a] confrontation with Mr. Yokel again?" he answered,

> Yeah because—
> . . . .
> Due to the fact that, like, this situation had nothing to do with me and it actually felt like it came right to my doorstep when I was totally minding my own business and had my own things going on, yeah, because it found me that day and I wasn't a part of any of it.

RP (Oct. 15, 2013) at 75. Yokel's reliance on this portion of Sigmund's testimony ignores Sigmund's other statements describing his fear that Yokel would carry out his threat to kill. It also ignores Sigmund's testimony immediately following this statement, where he testified about the no-contact order and Yokel's stabbing him. In a short span of time, Yokel attempted to take

4

No. 45545-5-II

his son away from Hayes, struck Sigmund in the face, verbally confronted Sigmund's friend Turner, and threatened to kill Sigmund. Two other eyewitnesses testified about Yokel assaulting and threatening Sigmund. Irritation and fear are not mutually exclusive emotions, and any expression of irritation, if that was indeed what Sigmund was expressing on the stand, does not undermine his concern about his safety. The jury found Sigmund's testimony credible. There was sufficient evidence for the jury to find that Sigmund had a reasonable fear that Yokel would act on his threat to kill.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Maxa, J.

Melnick, J.

5