**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION  II**

| | |
|---|---|
| STATE OF WASHINGTON, | No.  45484-0-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| JONAH MICHAEL JOHNSON, | |
| Appellant. | |

BJORGEN, A.C.J. — A jury returned a verdict finding Jonah Johnson guilty of felony harassment—threat to kill.  The jury also returned a special verdict finding that Johnson committed the offense against a household member.  Johnson appeals, asserting that the State failed to present sufficient evidence in support of his conviction.  We affirm.

FACTS

On August 17, 2013, Johnson and his girlfriend, Heather Luurs, began arguing at Luurs' apartment in Chehalis, after which Luurs locked Johnson out of her apartment.  While locked out, Johnson called Luurs' cell phone and left voice messages.  In his messages, Johnson called

Luurs several expletive-laden terms and, in one of the messages, told Luurs, "[T]he next time I see you it's on mother-[expletive], I'm going to blast your [expletive] face in." Ex. 1, track 2.[1]

Later that afternoon, a neighbor, Teresa Steffens, heard Johnson pounding on Luurs' door and yelling for around 20 minutes; Luurs was still inside her apartment at this time. Steffens heard Johnson yell, "I'm going to kill you, you [expletive]." Report of Proceedings (RP) at 53. Steffens called the police. After the police arrested Johnson, Steffens spoke with Luurs. Luurs was shaking and trembling, and it appeared to Steffens that she was "scared and frightened." RP at 55. Steffens stated that Luurs told her that "[s]he was relieved that [Steffens] called the police and that she wasn't sure how she was going to get out of the house otherwise." RP at 56.

Chehalis police officer Michael Renshaw spoke with Luurs and conducted a taped interview of her. In the taped interview, Luurs stated that Johnson told her, "[H]e was going to kill [her]." Ex. 1, track 1. Renshaw stated that before beginning the taped interview, Luurs told him that she was scared of Johnson but denied being afraid after starting the taped interview. The State charged Johnson with one count of felony harassment—threat to kill, and alleged the aggravating factor that Johnson committed the crime against a family or household member.

At trial, Luurs testified that she was not afraid of Johnson, that Johnson never threatened to kill her, and that she interpreted Johnson's message that he would "blast her [expletive] face off" to mean that he would "scream and yell" at her. RP at 44-45. Luurs denied hearing Johnson yelling outside of her apartment and denied speaking with her neighbor on the day of the

---

[1] Taped interview between Chehalis police officer Michael Renshaw and defendant/appellant Jonah Johnson, (Aug. 2012), at 3 min., 19 sec., (on file with court).

incident. Johnson testified at trial that he did not threaten to kill Luurs and that he used the word "blast" in his voice message to convey that he would yell at Luurs. RP at 109-10. A recording of Johnson's voice messages and a recording of Luurs' taped interview were admitted at trial and played for the jury.

The jury returned a verdict finding Johnson guilty of felony harassment—threat to kill. The jury also returned a special verdict finding that Johnson and Luurs were family or household members at the time of the offense. Johnson appeals his resulting conviction.

ANALYSIS

Johnson asserts that the State failed to present sufficient evidence to convict him of felony harassment based on a threat to kill. We disagree and affirm Johnson's conviction.

Sufficient evidence exists to support a conviction if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn from that evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable for purposes of this analysis. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

To convict Johnson of felony harassment based on a threat to kill, the State had to prove beyond a reasonable doubt that Johnson knowingly threatened to kill another without lawful

authority and that the victim had a reasonable fear that Johnson would carry out the threat to kill. RCW 9A.46.020(1), (2)(b); *State v. Mills*, 154 Wn.2d 1, 11-12, 109 P.3d 415 (2005). Additionally, the State was required to prove that Johnson's threat to kill was a "true threat." *State v. Kilburn*, 151 Wn.2d 36, 54, 84 P.3d 1215 (2004). True threats are statements "made 'in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of [another individual].'" *State v. Williams*, 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001) (alterations in original) (quoting *State v. Knowles*, 91 Wn. App. 367, 373, 957 P.2d 797 (1998)). It is not required that the speaker actually intend to carry out the threat, only that "a reasonable speaker would foresee that the threat would be considered serious." *State v. Schaler*, 169 Wn.2d 274, 283, 236 P.3d 858 (2010).

Johnson first argues that sufficient evidence did not support the jury finding that he had uttered a "true threat" to kill Luurs. We disagree. Viewing the evidence in a light most favorable to the State, the jury had before it sufficient evidence from which to conclude that Johnson made his threats to kill Luurs under such circumstances that a reasonable person would view his threats "as a serious expression of intention" to kill her. *Williams*, 144 Wn.2d at 207-08. The State presented evidence at trial that after Luurs locked Johnson out of her apartment, Johnson left her a profanity-laden voice mail threatening to "blast your [expletive] face in." RP at 35; Ex. 1, track 2. Because this voice mail was played to the jury, the jury could determine whether Johnson appeared to be serious in conveying this threat. A threat to blast someone's face in may reasonably be interpreted as a threat to kill that person and, as the sole arbiters of

4

witness credibility, it was for the jury to determine whether it should believe Luurs' and Johnson's testimony that "blast" meant only a threat to yell rather than a threat to kill. The State also presented evidence that Johnson yelled threats to kill Luurs from outside of her apartment. In addition to supporting the jury's finding of a true threat on its own, this evidence also provided the jury with a reasonable inference that Johnson's voice mail was intended as a serious expression of a threat to kill Luurs. Accordingly, we hold that the State presented sufficient evidence of a true threat to kill.

Johnson also argues that the State failed to present sufficient evidence that Luurs reasonably feared that Johnson would carry out his threat to kill her. Again, we disagree.

In support of his argument, Johnson cites to Luurs' testimony in which she stated that she did not fear Johnson, that Johnson did not threaten to kill her, and that she did not hear him yelling from outside her apartment. Again, it was within the exclusive province of the jury to determine witness credibility, and we hold that the State presented sufficient circumstantial evidence from which the jury could determine that Luurs reasonably feared Johnson would carry out his threats to kill her. Steffens testified that shortly after Johnson was arrested, Luurs was physically shaking, appeared scared, and was relieved that Steffens had called the police. Renshaw also testified that Luurs told him she was scared of Johnson prior to the taped interview. Although Luurs denied that she interpreted Johnson's voice mail message as a threat to kill and denied hearing Johnson's threats to kill her from outside of her apartment, the jury could have found this testimony not credible, particularly in light of the taped interview in which Luurs stated that Johnson had told her that "he was going to kill [her]." Ex. 1, track 1. Accordingly, we hold that sufficient evidence supports Johnson's conviction for felony

harassment based on a threat to kill. For these reasons, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

JOHANSON, C.J.

MAXA, J.