Roy BAUER, Plaintiff–Appellee,

v.

Cedric A. SAMPSON, Defendant–Appellant.

Nos. 99–56964, 00–55408

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 2001

Filed Aug. 15, 2001

As Amended Oct. 15, 2001.

David C. Larsen (argued) and Robert E. King, Rutan & Tucker, Costa Mesa, California, for the defendant-appellant.

Carol A. Sobel (argued), Law Office of Carol A. Sobel, Santa Monica, California, for the plaintiff-appellee.

Before: RYMER, HAWKINS, and GOULD, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

Cedric Sampson, Chancellor of the South Orange County Community College District ("SOCCCD" or "the District"), appeals a grant of summary judgment in favor of Roy Bauer, a tenured professor of ethics and political philosophy, in Bauer's 42 U.S.C. § 1983 case. Sampson contends that: (1) the District's policy against workplace violence is facially constitutional; (2) the District's policy against workplace vio-lence is constitutional as applied to Bauer; (3) the District's policy against racial discrimination or harassment is constitutional as applied to Bauer; and (4) Bauer is not entitled to attorney's fees, neither as awarded nor at all.

## FACTS AND PROCEDURAL HISTORY

Bauer is a tenured professor of ethics and political philosophy at Irvine Valley College ("IVC"), one of two campuses comprising the District, which is located in Orange County, California. As the District's Chancellor, Sampson oversees IVC and its sister school, Saddleback College. Sampson, upset at writings and illustrations prepared and circulated by Bauer, sought to discipline him, order him not to make such writings or illustrations in the future, and force him to undergo counseling.

The writings and illustrations were prepared during a traumatic time for IVC and the District. Evaluating the District, an independent team of investigators from the Accrediting Commission for Community and Junior Colleges ("the Accrediting Commission"), noted that "the college [IVC] and the district have experienced much turmoil in the past several years." The Accrediting Commission attributed the turmoil partially to Orange County's financial troubles and primarily to a four-to-three split on the District's Board of Trustees ("the Board"). The report prepared by the Accrediting Commission characterized the situation thus: "A high-profile, often controversial group of trustees [the majority of four] felt obliged to involve itself actively in the day-to-day operations of the district and of the colleges far beyond the traditional role for trustees." The Board's increased involvement allegedly resulted in the retirement of a chancellor, the resignation of two college

presidents, and other attrition. Eventually, the Board appointed an acting President for IVC, Raghu Mathur, in, according to the Accrediting Commission, "a manner viewed by many as intrusive and by all as controversial." Despite the controversy surrounding his appointment, Mathur was made the permanent President of IVC.

Bauer did not approve of Mathur's appointment and many of the Board's other actions. He voiced his disapproval in a campus newspaper called "Dissent," which he published and circulated himself under fictitious by-lines. Four writings and two illustrations from "Dissent" are at issue in this case:

Writing 1: (November 2, 1998 issue) "I, for one, have etched the name of Sherry 'Realpolitik' Miller–White and others of her ilk on my permanent shit list, a two-ton slate of polished granite which I hope to someday drop in Raghu Mathur's head."

Writing 2: (November 9, 1998 issue) Commenting on a remark by someone at a public meeting of the Board that those present were "the very best people in the district," stating, "In a room like that, no decent person could resist the urge to go postal."

Writing 3: (November 9, 1998 issue) A fantasy description of a funeral for a district trustee, who was the subject of a heated recall campaign, at which the other trustees and President Mathur are asphyxiated by "a lurid gas emanating from the Great Man's gaping mouth."

Writing 4: (November 16, 1998 issue) Satirizing President Mathur's policies by writing: "[W]e at Dissent announce the founding of the Milosevich–Mathur Academic Integrity Matrix. I couldn't think of a more annoying business ed sounding type word than 'matrix;' besides, it permits a satisfying acronym: MAIM."

Illustration 1: (November 16, 1998 issue) "Tales of the Backdoor Gooster."

Illustrates a story of underhanded tactics used by President Mathur in creating an "enemies list" and then beheading his enemies.

Illustration 2: (November 23, 1998 issue) "Quick the Downsizers are Coming Again!" Accompanies an article on micromanagement, discussing the anticipated "downsizing" of IVC. Shows three shrunken people assembling a rifle, with one pointing it outward.

Sampson responded to these writings and illustrations by letter, claiming that they violated the District's policies on workplace violence and racial discrimination or harassment. Sampson "strongly urge[d]" Bauer to participate in the District's Employee Assistance Program to "[deal] with [his] feelings of anger," told Bauer that he was expected to comply with the Board's workplace violence and racial discrimination or harassment policies, and called Bauer in for a meeting.

At the meeting, Sampson told Bauer that the writings and illustrations violated the Board policies on workplace violence and racial discrimination or harassment and that a negative entry was being placed in his personnel file. This meeting was memorialized in a letter, which directed Bauer to: (1) "avoid any form of discrimination against or harassment of SOCCCD employees as described in Board Policy 4000.5"; (2) "immediately cease all verbal threats and violent behavior overtones as required in Administration Regulation 4000.3"; and (3) "[s]chedule a minimum of two meetings with the employee assistance counselor provided by the District, or make similar arrangements with another counselor approved by the Vice Chancellor [of] Human Resources, and report, in writing, that you have met the counselor. The confirming letter will become part of the District's record and your personnel file." The letter warned that failure to comply

with its terms "would be grounds for more severe discipline."

Rather than adhere to these terms, Bauer brought suit in the district court, seeking declaratory and injunctive relief as well as damages based on four causes of action: (1) abridgement of his free speech rights, in violation of First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Article I, section 2 of the California Constitution; (2) abridgement of his right to petition, in violation of the First Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article 1, section 3 of the California Constitution; (3) abridgement of his right to equal protection, in violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article 1, section 7 of the California Constitution; and (4) violations of the whistle-blower protections of California Labor Code § 1102.5.

The district court granted Bauer preliminary injunctive relief, ordering Sampson (1) not to enforce the workplace violence and racial discrimination or harassment policies against Bauer and (2) to withdraw the directive for Bauer to undergo counseling.[1]

After discovery, Bauer moved for full summary judgment, which the district court granted as to his first two causes of action—the free speech and right to petition abridgements premised on his federal constitutional rights enforced through § 1983. The claim based on his equal protection rights was dismissed as surplusage, the claim based on California labor law denied, and the request for declaratory judgment ruled moot. Sampson timely appealed.[2]

Bauer filed a motion to amend the judgment to include attorney's fees, which the district court granted. The court determined the fee rate for Bauer's counsel to be $375 per hour, for a total fee award of about $125,000. Plaintiff's costs came to just under $1700. Sampson timely appealed the fee and cost award as well. We have jurisdiction under 28 U.S.C. §§ 1291 and 1292(a)(1).

## STANDARDS OF REVIEW

A grant of summary judgment is reviewed de novo. *Weiner v. San Diego County,* 210 F.3d 1025, 1028 (9th Cir.2000). In the civil rights context, attorney's fee awards made pursuant to 42 U.S.C. § 1988 are generally reviewed for an abuse of discretion.[3] *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1160 (9th Cir.2000).

## ANALYSIS

### I. Facial Challenge

Board Policy 4000.3 defines workplace violence as "verbal threats, violent behavior or physical conduct which interferes with the employee's safety in the workplace." Administrative Regulation 4000.3 implements the policy "by defining its components and assigning responsibilities for carrying out the policy." Administrative Regulation 4000.3(1) lists two definitions of "workplace violence":

a. Workplace violence is defined as verbal threats, violent behavior or

---

1. The district court also ordered that Bauer be excused from posting a bond or other security to obtain the preliminary injunction.

2. The district court did not award Bauer any damages and he has filed no cross-appeal, so damages have dropped out of the case.

3. Section 1988 is the statutory provision governing fee awards for successful § 1983 plaintiffs.

physical conduct, which interferes with employee's safety in the workplace.

b. Workplace violence includes, but is not limited to, making written, physical, or visual contact with verbal threats or violent behavior overtones.

In *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the Supreme Court articulated a standard for First Amendment facial overbreadth and vagueness challenges:

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.

Sampson argues that the District's workplace violence policy does not reach constitutionally protected conduct because it only prohibits "threats" of violence. However Administrative Regulation 4000.3(1)(b) extends past "threats" to also proscribe expression with violent "overtones."

"In general, threats are not protected by the First Amendment." *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 371 (9th Cir.1996). As *Lovell* explains:

We have set forth an objective test for determining whether a threat is a "true threat" and, thus, falls outside the protection of the First Amendment:

"whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." 90 F.3d at 372 (quoting *United States v. Orozco–Santillan*, 903 F.2d 1262, 1265 (9th Cir.1990)).

Because some expression with violent "overtones" would not offend this reasonable person standard (i.e., would not be a "true threat"), Administrative Regulation 4000.3(1)(b)'s proscription violates the First Amendment under *Village of Hoffman Estates*, 455 U.S. at 494–95, 102 S.Ct. 1186. Simply put, a substantial amount of "overtones" are not "threats." Therefore, the second definition of workplace violence facially violates the First Amendment. Since Board Policy 4000.3 and Administrative Regulation 4000.3(1)(a) prohibit only "verbal threats ... which interfere[ ] with employee's safety in the workplace," these definitions are facially constitutional.

## II. "As Applied" Analysis

Sampson's admonitory letter to Bauer directed him to "avoid any form of discrimination against or harassment of SOCCCD employees as described in Board Policy 4000.5" and "immediately cease all verbal threats and violent behavior overtones as required in Administrative Regulation 4000.3." As explained above, it was unconstitutional for Sampson to attempt to forbid expression with "violent behavior overtones" that fell short of being a "true threat" (Administrative Regulation 4000.3(1)(b)). However, it is facially constitutional to regulate "true threats" as do Board Policy 4000.3 and Administrative Regulation 4000.3(1)(a). Additionally, Bauer concedes that the discrimination and harassment regulation is facially constitutional.[4] Therefore, we next consider

---

4. Board Policy 4000.5 prohibits discrimination or harassment on the basis of certain

listed characteristics "pursuant to applicable federal and state statutes, guidelines, and reg-

whether the prohibitions on racial discrimination or harassment and violent threats were applied to Bauer in a constitutional manner.

Sampson based his racial discrimination or harassment charge on Bauer's use of the name "Mr. Goo" for IVC President Raghu Mathur. In a letter, Sampson told Bauer that his "misuse" of Mathur's first name was "dehumanizing and insulting." Sampson contends that the name is a play on the pejorative term "gook" and the fact that "goo" means "excrement" in Hindi. Bauer claims that the name is simply a play on the similarity between Mathur's first name, Raghu, and that of a cartoon character, Mr. Magoo. Sampson based his workplace violence charge on Bauer's "verbal threats and violent behavior overtones."

We agree with the district court's analysis that the policies were unconstitutionally applied to Bauer because "though at times adolescent, insulting, crude and uncivil, Bauer's publication focuses directly on issues of public interest and importance." We also agree with the district court that Bauer's statements were not "true threats" and that the District's rights as an employer were not impermissibly burdened by Bauer's expression.

### A. Protected Expression

■■■■ Expression involving a matter of public concern enjoys robust First Amendment protection. "Whether a public employee's speech involves a matter of public concern depends upon 'the content, form, and context of a given statement, as revealed by the whole record.'" *Cochran v. City of Los Angeles*, 222 F.3d 1195, 1200 (9th Cir.2000) (quoting *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). "A public employee's

speech or expressive conduct deals with a matter of public concern when it 'can be fairly considered as relating to a matter of political, social, or other concern to the community.'" *Id.* (quoting *Voigt v. Savell*, 70 F.3d 1552, 1559 (9th Cir.1995)). Sampson concedes that Bauer's expression dealt with matters of public concern, arguing not that the expression is unprotected, but rather that either (1) the expression loses its protected status because it constitutes "true threats" or (2) the District's interests as an employer in regulating the expression outweigh Bauer's First Amendment rights as an employee.

### B. "True Threat" Analysis

■■■■ "[T]he constitutional guarantee of free speech ... does not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action that is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 446, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). "Whether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent of harm or assault." *United States v. Orozco–Santillan*, 903 F.2d 1262, 1265 (9th Cir.1990). "Alleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners." *Id.*

■■■■ We agree with the district court's holding that although Bauer's writings have some violent content, they "are hyperbole of the sort found in non-main-

---

ulations, and district policies and regulations" in any District employment process, position, program, service, or activity. The district

court rejected a facial challenge to this policy, a decision Bauer does not appeal.

stream political invective and in context ... are patently *not* true threats." (Emphasis in original). Under the reasonable speaker test, these writings would not be perceived as "true threats." They were made in an underground campus newspaper in the broader context of especially contentious campus politics.

Sampson argues that the expression takes on a more insidious tenor when considered in the overall context of Bauer's other behavior on campus. Sampson alleges that Bauer: (1) had verbal run-ins with his supervisor and other District employees more sympathetic to the administration; (2) told his supervisor, "You and Mathur are going down"; (3) told a coworker, "Your day has come," after the coworker mocked a friend; and (4) referred to Mathur and an African–American Trustee as "the dark side." Sampson has not, however, alleged that Bauer has ever been physically abusive or violent on or off campus. Nor did Sampson base his disciplinary action on any of these incidents; it was based on the six writings found in "Dissent."

Within the larger context of the turbulent IVC campus community, the conduct alleged by Sampson does not transform Bauer's expression into "true threats." We agree with the district court that there is simply no way a reasonable reader would have construed the writings and illustrations to be "true threats," even if that reader were aware of all of the other conduct alleged by Sampson.

## C. The District's Interests as an Employer

 [T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case [alleging First Amendment infringement] is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In order to prevail, a public employee must first show that his statements are constitutionally protected. *Johnson v. Multnomah County,* 48 F.3d 420, 422 (9th Cir.1995). Once a plaintiff shows that his statements were of public concern and that the statements were a substantial motivating factor for the disciplinary action taken against him, the burden shifts to the defendant to show that its legitimate administrative interests outweigh the plaintiff's First Amendment rights. *Gilbrook v. City of Westminster,* 177 F.3d 839, 866–67 (9th Cir.1999). "This issue is one of law and a determination is to be made by the court." *Cochran,* 222 F.3d at 1200 (citing *Connick v. Myers,* 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).[5]

**5.** We note the dissent's concern that the district court did not draw "all permissible inferences" in Sampson's favor in conducting its *Pickering* analysis at summary judgment. Under the plurality opinion in *Waters v. Churchill,* 511 U.S. 661, 677, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), when conducting *Pickering* balancing, "courts look to the facts as the employer *reasonably* found them to be." (Emphasis in original). Unlike *Waters,* the facts of this case are not in dispute. Here the parties agree precisely on the expression at issue—the six writings. *Connick* and *Waters* teach that in such a circumstance the application of *Pickering* to settled facts is the province and duty of the court. We are not to defer to the governmental employer's analysis of the facts, just the governmental employer's reasonable determination of the facts. In any event, Dr. Lipian's declaration is largely conclusory and is not based on any personal interview or examination of Bauer.

As discussed above, Sampson concedes on appeal that Bauer's expression was about a matter of public concern. Sampson also concedes that the expression was a substantial factor in causing the discipline upon which Bauer's suit is based. Therefore, the only issue is whether the District's interests as an employer outweigh Bauer's First Amendment rights.

 *Pickering* "requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Voigt,* 70 F.3d at 1561. In *Brewster v. Bd. of Educ.,* 149 F.3d 971, 980–81 (9th Cir.1998), we listed five factors for use in the *Pickering* balancing analysis: (1) whether the employee's speech disrupted harmony among co-workers; (2) whether the relationship between the employee and the employer was a close working relationship with frequent contact which required trust and respect in order to be successful; (3) whether the employee's speech interfered with performance of his duties; (4) whether the employee's speech was directed to the public or the media or to a governmental colleague; and (5) whether the employee's statements were ultimately determined to be false. "Because the *Pickering* balance necessarily involves a fact-sensitive inquiry involving the totality of the circumstances, no single factor is dispositive." *Gilbrook,* 177 F.3d at 868.

 Under the *Pickering* balancing analysis, as elucidated by *Brewster,* the District's interests as an employer do not outweigh Bauer's First Amendment rights. First, Bauer's expression no doubt created some disharmony among his colleagues, especially those more sympathetic to the administration. In light of the Accrediting Commission's report, however, it can hardly be said that Bauer was the source of the disharmony on IVC's campus. IVC and the District were going through a contentious period—Bauer's commentary on these troubles may have raised awareness, but the expression certainly did not cause them. Second, given the nature of academic life, especially at the college level, it was not necessary that Bauer and the administration enjoy a close working relationship requiring trust and respect—indeed anyone who has spent time on college campuses knows that the vigorous exchange of ideas and resulting tension between an administration and its faculty is as much a part of college life as homecoming and final exams. Third, Sampson has not shown that Bauer's speech had any negative impact on Bauer's teaching or other professional responsibilities. Fourth, Bauer's expression was disseminated through "The Dissent," which was distributed exclusively to the District community. Finally, fifth, Bauer's expression was clearly opinion, not factual assertions that could be proven false.

The district court properly conducted its *Pickering* balancing analysis. We agree that Bauer's First Amendment rights clearly outweigh the District's interests as an employer in silencing his expression.

### III. Attorney's Fees

Sampson challenges both Bauer's entitlement to fees under 42 U.S.C. § 1988 and the amount awarded by the district court.

### A. "Special Circumstances"

 Plaintiffs in § 1983 actions "should ordinarily recover an attorney's fee unless special circumstances could render such an award unjust." *Newman v. Piggie Park Enters., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). We have a two-prong test for determining such special circumstances, "(1) whether allowing attorney's fees would further the purposes of § 1988 and (2) whether the balance of the equities favors or disfavors

the denial of fees." *Gilbrook,* 177 F.3d at 878.

 Sampson argues that three "special circumstances" warrant a departure from the usual fee award rule in this case: (1) this is a case of first impression, so the public benefits from full litigation; (2) Bauer could have found a lawyer without the fee award inducement because of the beneficial publicity generated by the case; and (3) Sampson litigated in good faith. All three arguments fail to rise to the level of a "special circumstance."

We need not decide whether the first two of these grounds would qualify as a "special circumstance" because they lack a factual basis in any event.

This is not a case of first impression. Both the Supreme Court and this circuit have published widely on the free speech rights of academics, the requirements for a statement to be a "true threat," and the invalidity of proscriptions on potentially violent expression that falls short of being a "true threat." Though these particular facts have not been litigated, the legal principles which govern this case were extant at its inception.

It also seems unlikely that Bauer could have gotten a lawyer to represent him on his own. The attorney's fees in this case totaled over $100,000—an attorney would be hard-pressed to provide that magnitude of representation just for beneficial publicity. The purpose of § 1988, allowing citizens to present constitutional claims when they have been wronged by governmental actors, would be frustrated by forcing a plaintiff such as Bauer to find an attorney willing to take on a decidedly local § 1983 case at a cost to himself of over $100,000.

 Finally, good faith litigation is not enough, on its own, to warrant a finding of "special circumstances." *Williams v. Hanover Hous. Auth.,* 113 F.3d 1294, 1301–02 (1st Cir.1997) ("The circuits are in

agreement … that defendants' good faith reliance on settled law … is not a 'special circumstance' warranting a denial of attorney's fees under § 1988.").

The district court was correct in ruling that this case does not present "special circumstances" justifying a decision not to award attorney's fees to Bauer.

**B. Hourly Rate**

 Sampson argues that the hourly rate determined by the district court for Bauer's counsel, $375 per hour, is excessive. The district court followed the proper procedure for such a determination under *Davis v. City and County of San Francisco,* 976 F.2d 1536, 1545–46 (9th Cir.1992), *vacated in part* 984 F.2d 345 (1993), considering declarations filed by local attorneys on behalf of both Sampson and Bauer. Reviewing these declarations, we cannot say that the district court abused its discretion in determining the hourly rate.

**C. Number of Hours**

 Sampson argues that Bauer was not sufficiently successful under *Sablan v. Dept. of Fin. of Commonwealth of N. Mariana Islands,* 856 F.2d 1317, 1325 (9th Cir.1988), and *Hensley* to merit a full fee award. Sampson argues that because Bauer filed five claims and only received relief from the district court as to two, his suit was only forty percent successful.

Such reasoning cannot stand under *Sablan,* which teaches that courts "must determine what [the plaintiff] sought to accomplish in bringing his lawsuit and then determine whether the lawsuit was causally linked to the relief actually obtained." 856 F.2d at 1325. Here, Bauer asked that the two Board policies not be applied to his expression, that Sampson's reprimanding letter be removed from his personnel file, and that he not undergo counseling. His suit accomplished all of these goals, a result preserved in this appeal. It simply is not material under *Sablan* or *Hensley* that Bauer alleged additional causes of action

which were dismissed on the merits or as surplusage or mooted by his victory.

Sampson also quibbles with the district court's calculation of Bauer's counsel's total hours. However, Sampson has not presented us with concrete evidence of which hours were overbilled, resulting in an abuse of discretion by the district court. We note that Bauer's attorney agreed to a voluntary twenty-hour reduction before the district court even addressed the issue. The district court did not abuse its discretion in calculating Bauer's attorney's hours.

## CONCLUSION

The district court correctly ruled that Administrative Regulation 4000.3(1)(b) is unconstitutional on its face because it prohibits speech with violent "overtones" that falls short of being threatening. However, the district court erred in holding that the entire workplace violence policy is facially unconstitutional: both Board Policy 4000.3 and Administrative Regulation 4000.3(1)(a) pass facial analysis.

The district court correctly ruled that the Board's policies on racial discrimination or harassment and workplace violence are unconstitutional as applied to Bauer. The district court did not abuse its discretion in deciding to award Bauer's attorney's fees, setting the rate for those fees, or in calculating the number of attorney hours to be paid.

AFFIRMED IN PART; REVERSED IN PART. Appellee is awarded costs on appeal.

RONALD M. GOULD, Circuit Judge, concurring in part and dissenting in part:

I concur in sections II.A, II.B, and III of the majority's analysis.

I respectfully dissent from section I because, in my view, Administrative Regulation 4000.3(1)(b) is not facially unconstitutional. I agree that, standing alone, the prohibition on expression with "violent behavior overtones" is unconstitutionally overbroad. However, this prohibition cannot sustain an overbreadth challenge because it does not reach a "substantial amount of constitutionally protected conduct." *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

I also respectfully dissent from section II.C and decline to walk in the path of error taken by the majority. These are hard cases because of the great weight and respect that properly must be given the dictates of the First Amendment. Nevertheless, the United States Supreme Court has pointed to some limits in the context of employment. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

As I see it, the evidence that Sampson submitted in opposition to Bauer's motion for summary judgment raised genuine issues of material fact concerning the ways in which Bauer's writings and illustrations, tinged with violence, affected the campus community, the peace of mind of administrators, faculty, and students, and the overall well-being of the college.[1] The dis-

---

1. Although the majority urges in its footnote 5 that the "parties agree precisely on the expression at issue—the six writings," the majority fails to address evidence in the record about the consequence of those writings for the campus. The majority does not even mention the government employer's submission of its expert psychiatrist's view that Bauer had an escalating interest in "violent actions and violent tools" and was sufficiently disturbed to require counseling. Recognizing that schools must have leeway to take protective or precautionary steps to counter risks of violence, we have recently upheld, against First Amendment challenge, a high school's suspension of a student who submitted a violent poem with descriptions of classroom shooting. *LaVine v. Blaine Sch. Dist.*, 257 F.3d 981 (9th Cir.2001). We should show similar tolerance here of the interests of the

trict court disregarded these issues, giving greater weight to the values underlying free speech. Yet, under *Pickering* the Supreme Court requires a balancing of facts relating to disruption in the employment context; a more fact-intensive inquiry was appropriate in light of the evidence submitted opposing summary judgment. In my view, the district court should have addressed the competing interests of Sampson and Bauer in a trial or at least in an evidentiary hearing where some factual determinations could be made, before conducting its analysis under *Pickering* and concluding that Bauer's free speech interests outweighed Sampson's legitimate administrative interests in restricting such speech.

The *Pickering* balancing analysis requires a factual inquiry into factors concerning: (1) whether the speech at issue disrupts harmony among co-workers; (2) the nature of the relationship between the employer and employee; (3) whether the speech inhibits the speaker's job performance; (4) to whom the speech was directed; and (5) the accuracy of the speech. *Brewster v. Bd. of Educ.*, 149 F.3d 971, 980–81 (9th Cir.1998) (setting forth five factors for use in the *Pickering* balancing analysis). Here, viewing the evidence in the light most favorable to Sampson and drawing all permissible inferences in his favor, there are serious fact issues concerning the extent and impact of the disruption resulting from Bauer's writings and illustrations.

We should consider declarations submitted in support of Sampson. For example, an economics professor declared that he had been "discouraged from pursuing administrative jobs because of Mr. Bauer and his disruptive presence." Another professor declared that she "felt physically

threatened by the violent newsletter sequence which underlies this litigation, some of which target[ed] [her] personally." Sampson declared that he placed restrictions on the "Dissent" only when "the publication became increasingly violent, suggesting physical harm to various employees, including Dr. Raghu Mathur, the College President."

For me, the most significant declaration is from Dr. Lipian, a forensic psychiatrist who, based in part upon a review of the "Dissent," concluded that: (1) "the District has a legitimate concern that Mr. Bauer has the potential, if not evaluated and possibly treated, of engaging in increasing forms of violent speech, and possibly violent conduct"; (2) "[i]n the absence of evaluation and treatment, [Mr. Bauer's] escalating interest in, discussion of, and threat to employ violent actions and violent tools ... is likely to worsen"; and (3) "Mr. Bauer's anger is likely to intensify.... [And] [a]ction upon unambiguously stated fantasies of revenge and destruction becomes an increasingly ominous risk." This declaration of a qualified forensic psychiatrist was given weight by the college and warrants more consideration than it received from the district court.

In an era when a wave of seemingly random, but frequent, violence has engulfed schools across our country, the district court gave too little attention to risks of ripening violence that may reasonably be inferred from the expert's submission. For Dr. Lipian to note an "increasingly ominous risk" of action based on "unambiguously stated fantasies of revenge and destruction" is no small matter, though one finds no mention of it in the district court opinion, or for that matter, in the majority's analysis. Accepting Dr. Lipi-

college, which at least warrant a trial or evidentiary hearing on issues of risks of violence

and consequent disruption.

an's statement as true for purposes of summary judgment, the college's response to this risk was moderate, reasonable, and restrained. The college did not censor Bauer, nor terminate him, but only sought to require that he submit to psychological counseling. Such a course was recommended by Dr. Lipian. Giving all inferences to Sampson, I decline to accept the views of the district court that risks of violence or other disruption must be disregarded without a trial or an evidentiary hearing to permit the district court to assess the evidence after determining credibility of witnesses.

I recognize that the college and the school district were experiencing difficulties when Bauer published the writings and illustrations at issue. But, I believe that, if Sampson's evidence is credited, the evidence supports the conclusion that Bauer did more than raise awareness of pre-existing problems. Rather, giving all reasonable inferences to Sampson, a trier of fact might conclude that Bauer was responsible for more than his share of the tension on campus.

*Pickering* "requires full consideration of the government's interest in effective and efficient fulfillment of its responsibilities to the public." *Voigt v. Savell,* 70 F.3d 1552, 1561 (9th Cir.1995). The college owed a duty to faculty and students to exercise the utmost care to avoid the possibility of violence and irreparable harm. *Cf. LaVine,* 257 F.3d 981. We cannot from this record say whether there was, as Dr. Lipian explicitly said, an "increasingly ominous risk" of violence that outweighed Bauer's free speech interests. Summary judgment was premature and inappropriate.