Carol L. CHAFFEE, Plaintiff,

v.

David ROGER, Clark County District Attorney, and Las Vegas Metropolitan Police Department, Defendants.

No. CVS030021–ECR(PAL).

United States District Court, D. Nevada.

March 25, 2004.

Carol L. Chaffee, Pro se, Idaho Falls, ID, for Plaintiff or Petitioner.

Stewart L. Bell, Clark County District Attorney, Las Vegas Metropolitan Police Department and David Roger: Michael L. Foley, Clark County District Attorney's Office, Civil Division, Las Vegas, NV, for Defendants.

Brian Sandoval, Attorney General, State of Nevada, by Gerald J. Gardner, Chief

Deputy Attorney General, Las Vegas, NV, for Amicus Curiae.

## CERTIFICATION ORDER

EDWARD C. REED, JR., District Judge.

Pursuant to Nevada Rule of Appellate Procedure 5 the Court respectfully certifies the following question to the Supreme Court of the State of Nevada:

### I. Question of Law

What conduct or speech constitutes a "threat" or "intimidation" punishable under Nevada Revised Statute 199.300(1)(b)? In other words, what is the definition of the terms "threat" and "intimidation" as used in Nevada Revised Statute 199.300(1)(b)?

### II. Statement of Facts and Nature of Controversy

#### A. Statement of Facts[1] and Procedural History

Plaintiff, Carol Chaffee[2] ("Plaintiff"), filed a complaint (# 2) for declaratory and injunctive relief in this Court on January 7, 2003, against the Clark County District Attorney and the Las Vegas Metropolitan Police Department (collectively the "Defendants"). The complaint challenges the facial constitutionality of Nevada Revised Statute ("NRS") 199.300(1)(b) under the doctrines of vagueness and overbreadth. The challenged statute reads as follows:

1. A person who directly or indirectly, addresses any threat or intimidation to a public officer, public employee, juror, referee, arbitrator, appraiser, assessor or any person authorized by law to hear or determine any controversy or matter, with the intent to

---

1. The essential facts of this case are largely uncontested.

2. Carol Chaffee, an attorney, appears in this action *pro se.*

induce him, contrary to his duty to do, make, omit or delay any act, decision or determination, shall be punished:

.       .        .        .        .

(b) If no physical force or immediate threat of physical force is used in the course of the intimidation or in the making of the threat, for a gross misdemeanor.[3]

NRS 199.300(1)(b).

Plaintiff alleges that she and her husband have in the past attended the Laughlin River Run motorcycle event in Laughlin, Nevada, where they publicly and privately criticized the behavior of police officers present at the event. This criticism apparently came to a head on April 29, 2000, when Plaintiff's husband was arrested under NRS 199.300(1)(b) for a statement he made during a traffic stop.[4] According to Plaintiff, this brought home the possibility of her own arrest for criticizing police officers at future motorcycle events in Clark County, Nevada, resulting in the present action.

On the same day that Plaintiff filed her complaint, she filed a motion for summary judgement (# 6), arguing for an immediate finding that NRS 199.300(1)(b) is facially unconstitutional. The Defendants responded with a counter motion to dismiss (# 10). In our order (# 19) addressing Plaintiff's motion for summary judgment and the Defendants' motion to dismiss, we raised *sua sponte* a jurisdictional issue, finding that the complaint failed to properly allege facts giving rise to standing. We therefore dismissed Plaintiff's complaint, but also granted leave to amend the same.

In light of this dismissal, we denied Plaintiff's motion for summary judgment and did not reach the merits of the Defendants' motion to dismiss. We also transferred the case to the unofficial southern division of the District of Nevada.

After filing an amended complaint (# 24), the Defendants filed another motion to dismiss (# 25). In a written order (# 28), we denied the Defendants' motion on the issue of standing, but left for consideration at a hearing the issues of dismissal for failure to state a claim and abstention under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

At the hearing, we found *Younger* abstention inapplicable to the case because of the dismissal of the criminal charges brought against Plaintiff's husband. We also denied the motion to dismiss for failure to state a claim, finding that the complaint raised a serious challenge to the constitutionality of NRS 199.300(1)(b). In particular, we noted the fact that, unlike similar statutes in other states, NRS 199.300(1)(b) lacked any definition of the terms "threat" or "intimidation." [5]

Soon after we issued our order on the Defendants' second motion to dismiss, Plaintiff filed another motion for summary judgment (# 31). In a minute order (# 35) dated May 30, 2003, we denied Plaintiff's motion for summary judgment without prejudice in order to allow us to comply with 28 U.S.C. § 2403(b) by permitting the Nevada Attorney General to intervene on behalf of the State of Nevada on the issue

---

**3.** NRS 199.300(1)(a) covers threats or intimidations made through the use of "physical force or the immediate threat of physical force." Plaintiff does not challenge the statute's proscription of such threats or intimidations.

**4.** The Clark County District Attorney instituted criminal proceedings against Plaintiff's

husband but these proceedings were eventually dismissed. (*See* Order of Dismissal, Attached to Pl.'s Resp. (# 38/39).) Plaintiff's husband is not a party to the present action.

**5.** We also substituted as Defendant David Roger, the current Clark County District Attorney, for Stewart L. Bell. *See* Fed.R.Civ.P. 25(d)(1).

of the constitutionality of NRS 199.300(1)(b). We noted that in ruling on the Defendants' second motion to dismiss (# 25) we were not faced with the prospect of actually finding NRS 199.300(1)(b) to be unconstitutional. However, in the context of Plaintiff's second motion for summary judgment, such a ruling was a possibility. In the same minute order, we also first raised the possibility of certifying a question to the Supreme Court of Nevada regarding a potential narrowing construction of NRS 199.300(1)(b).

In response to our minute order (# 35), the Attorney General filed an amicus brief arguing for the constitutionality of NRS 199.300(1)(b). Plaintiff opposed the brief, and renewed her motion for summary judgment (# 38/39).

## B. Overbreadth and Vagueness

"Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)) (quotation marks omitted). Consequently, a plaintiff bears a heavy burden in making a facial challenge to a statute. *Id.*

Plaintiff insists that NRS 199.300(1)(b) is overbroad in that it sweeps a substantial amount of constitutionally protected speech within its provisions. In addition, Plaintiff claims the statute is vague because it does not give fair notice to persons of ordinary intelligence of the acts it forbids and gives unlimited discretion to police and prosecutors regarding its enforcement.

### 1. Overbreadth

■ The overbreadth doctrine allows parties to "challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612, 93 S.Ct. 2908. To mount a successful facial challenge to a statute on overbreadth grounds, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). A law that punishes a substantial amount of constitutionally protected speech both in an absolute sense and in relation to the law's plainly legitimate sweep will be held invalid as overbroad. *Virginia v. Hicks*, 539 U.S. 113, 118–19, 123 S.Ct. 2191, 2196–97, 156 L.Ed.2d 148 (2003). In such a case, all enforcement of the law is invalidated. *Id.*

■ We believe a realistic danger exists that NRS 199.300(1)(b) prohibits a substantial amount of constitutionally protected speech. To be sure, the statute's proscription of threats or intimidations made by the use or threat of the use of physical force is proper. Such "true threats"—defined as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals"—are not entitled to constitutional protection. *Virginia v. Black*, 538 U.S. 343, 358–59, 123 S.Ct. 1536, 1547–48, 155 L.Ed.2d 535 (2003). However, by its very structure NRS 199.300 forbids much more than "true threats." *See Lewis v. City of New Orleans*, 415 U.S. 130, 132, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974) (noting that the challenged statute "plainly ha[d] a broader sweep than the constitutional definition of 'fighting words' ").

Section (1)(a) of the statue covers true threats, which are punishable for a first offense as a category C felony and for a second offense as a category B felony. NRS 199.300(1)(a). Section (1)(b), on the other hand, applies where "no physical force or immediate threat of physical force is used in the course of the intimidation or in the making of the threat." NRS 199.300(1)(b). Limitless forms of protected speech are potentially covered by this section. For example, a citizen believing he was wrongfully pulled over for a traffic stop because of his race might object to the officer's action by saying, "If you write me a ticket, I will file a complaint with your superior." Or, a person could protest a perceived unlawful arrest by threatening to write a letter to the editor of the local newspaper. Such "threats" would undoubtedly constitute protected speech, yet they appear to fall directly under NRS 199.300(1)(b).

While the statute does contain a scienter element, requiring the threat or intimidation to be made with "the intent to induce [the public officer], contrary to his duty to do, make, omit or delay any act, decision or determination," such a requirement does not prevent the statute's potential application to constitutionally protected conduct. Although not directly on point, the Supreme Court case of *Houston v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), is instructive. In that case, the appellee, Hill, was arrested for shouting at officers, who were talking with another individual, with the admitted intent to divert the officers' attention from their duties. *Id.* at 453–54, 107 S.Ct. 2502. The statute under which Hill was arrested made it unlawful to "in any manner ... interrupt any policeman in the execution of his duty." *Id.* at 455, 107 S.Ct. 2502 (citing Code of Ordinances, City of Houston, Texas, § 34–11(a) (1984)). In holding the statute to be unconstitutionally overbroad, the Court explained that, "[t]he freedom of

individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 462–63, 107 S.Ct. 2502.

Even if a person made one of the "threatening" statements described above with the intent to induce the public officer not to perform her duty, such a "threat" would be constitutionally protected. And, to the extent such speech put the public officer "in fear," the speech could be considered an "intimidation" prosecutable under the statute despite the speech's protected status. *See* Black's Law Dictionary 821 (6th ed.1990) (defining "intimidation" as "[u]nlawful coercion; extortion; duress; putting in fear"). The problem is that the terms "threat" and "intimidation" as used in NRS 199.300(1)(b) are not defined in any way that would limit their application to a core of unprotected speech.

Because of NRS 199.300(1)(b)'s broad language, there is a realistic danger that it could be applied to a substantial amount of constitutionally protected speech. At this time, then, we have our doubts as to the statute's constitutionality under the overbreadth doctrine.

## 2. Vagueness

■ We are likewise concerned that NRS 199.300(1)(b) is vague in violation of the Fourteenth Amendment. A law can be challenged as vague for either of two independent reasons: (1) "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). If a challenged law reaches a substantial amount of protected speech, it need not be vague in all possible circum-

stances to be invalidated. *Nunez v. City of San Diego,* 114 F.3d 935, 940 (9th Cir. 1997). Conversely, if a law does not reach constitutionally protected speech, it must be vague in all of its applications. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

Under the first vagueness test, it is doubtful that the law provides persons of ordinary intelligence a reasonable opportunity to understand the conduct proscribed. *Hill v. Colorado,* 530 U.S. at 732, 120 S.Ct. 2480. Because subsection (b) clearly does not apply to threats or intimidations involving physical force, an ordinary citizen would likely be confused as to what threats or intimidations are prohibited. For example, is it unlawful to "threaten" a district attorney with a tough challenge in an upcoming election with the intent to induce her to drop a case? Even though the district attorney might have a "duty," NRS 199.300(1), to zealously pursue the case, there can be little question that such a "threat" would be entirely protected under the First Amendment. However, because the term "threat" is not defined, a citizen of ordinary intelligence could not be sure that such conduct is permitted under the statute.[6]

Problems also exist under the second vagueness test. As we have discussed, NRS 199.300(1)(b)'s prohibition of threats and intimidations meant to induce a public official's noncompliance with his duties potentially covers a host of constitutionally protected conduct. This same broadness of scope also results in a lack of standards in the statute's enforcement. Even assuming the threatening individual has the requisite intent, what type of threat will suffice? Does the threat have to be to the officer's economic or property interests? Does it have to be an unlawful threat? The questions and attendant answers are limitless. As a result of this uncertainty, the question of what speech the statute applies to is left entirely up to the officers enforcing the law. We expect arbitrary and discriminatory enforcement to result because different officers might perceive a certain communication to be threatening or intimidating, or not. For this reason also, NRS 199.300(1)(b) appears to be vague.

### 3. Comparison With Similar Statutes

A comparison of NRS 199.300(1)(b) with other similar statutes is helpful to further illustrate the various problems just discussed. For example, in *State v. Stephenson,* 89 Wash.App. 794, 950 P.2d 38 (1998), the Washington Court of Appeals, analyzing an overbreadth challenge, upheld the constitutionality of a Washington statute prohibiting the intimidation of public servants. The statute at issue provided that, "[a] person is guilty of intimidating a public servant if, by use of a threat, he attempts to influence a public servant's vote, opinion, decision, or other official action as a public servant." Wash. Rev.Code § 9A.76.180. The statute provided numerous definitions of the term "threat." The definition challenged in *Stephenson* defined that term as "[t]o do any other act which is intended to harm substantially the person threatened or another with respect to his health, safety, business, financial condition, or personal relationships." *Stephenson,* 950 P.2d at 40 (quoting Wash. Rev.Code § 9A.04.110(25)(j)). After finding that this definition encompassed a "real and substantial" amount of protected speech, the court concluded it was nonetheless constitutional because the definition narrowly tailored the law to serve the compelling purposes of protecting public servants from threats of substantial harm, the public interest in a fair and indepen-

---

**6.** As described above, many "threats" could also be perceived as "intimidation."

dent decision-making process, and the public confidence in democratic institutions. *Id.* at 42.

In *State v. Knowles*, the Washington Court of Appeals upheld a similar statute addressing the intimidation of judges that defined the term "threat" as "[t]o accuse any person of a crime or cause criminal charges to be instituted against any person." 91 Wash.App. 367, 957 P.2d 797, 800 (1998) (quoting Wash. Rev.Code § 9A.04.110(25)(d)). Relying heavily on its *Stephenson* decision, the court held that this definition of "threat" was also narrowly tailored to serve compelling state interests. *Id.* at 804.

The Supreme Court of Colorado considered a statute forbidding the influencing of public servants in *People v. Janousek*, 871 P.2d 1189 (Colo.1994). The statute in that case read, "[a]ny person who attempts to influence any public servant by means of deceit or by threat of violence or economic reprisal against any person or property, with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action ... commits a class 4 felony." *Id.* at 1192 n. 6 (quoting Colo.Rev.Stat. § 18–8–306). The court held that the statute did not reach a real and substantial amount of constitutionally protected speech and, nevertheless, was narrowly tailored "to enable the People to proscribe the type of conduct that rises to a level of criminal culpability." *Id.* at 1193–94. Additionally, the court explained that the terms "deceit" and "economic reprisal" were not vague because "the statute define[d] the offense with particular words to limit the scope of the offense, and the language [was] plain and unambiguous." *Id.* at 1196.

NRS 199.300(1)(b) does not contain language that limits its scope as was present in the above cases. The laws at issue in those cases narrowly limited the threats proscribed. *Stephenson*, 950 P.2d at 40

(quoting Wash. Rev.Code § 9A.04.110(25)(j)) (prohibiting threats to "harm substantially the person threatened or another with respect to his health, safety, business, financial condition, or personal relationships"); *Knowles*, 957 P.2d at 800 (quoting Wash. Rev.Code § 9A.04.110(25)(d)) (proscribing threats to "accuse any person of a crime or cause criminal charges to be instituted against any person"); *Janousek*, 871 P.2d at 1192 n. 6 (quoting Colo.Rev.Stat. § 18–8–306) (limiting proscription to threats of violence or economic reprisal); *see also Reilly v. State Dep't of Corr.*, 847 F.Supp. 951 (M.D.Fla.1994) (finding statutes that forbade the use of unlawful harm or the threat of unlawful harm against a public servant and the sending of letters containing a threat to kill or do bodily injury neither vague nor overbroad). NRS 199.300(1)(b), in contrast, employs very broad terms, and could easily be applied to protected speech. In this sense, we believe NRS 199.300(1)(b) more closely resembles a regulation analyzed by the Ninth Circuit in *Bauer v. Sampson*, 261 F.3d 775 (9th Cir.2001).

In *Bauer*, the court considered a facial challenge to a community college district policy governing workplace violence. Board Policy 4000.3 defined workplace violence as "verbal threats, violent behavior or physical conduct which interferes with the employee's safety in the workplace." *Id.* at 781. The district's Administrative Regulation 4000.3(1) implemented the policy by providing two further definitions of workplace violence:

a. Workplace violence is defined as verbal threats, violent behavior or physical conduct, which interferes with employee's safety in the workplace.

b. Workplace violence includes, but is not limited to, making written, physi-

cal, or visual contact with verbal threats or violent behavior overtones. *Id.* at 781–82.

Addressing the facial overbreadth challenge, the court found Administrative Regulation 4000.3(1)(b) overbroad because "a substantial amount of [violent] 'overtones' are not [true] 'threats.'" *Id.* at 782. There was a lack of specificity regarding the exact meaning of "overtones" as used in the Regulation, and, because the Regulation reached a substantial amount of protected speech, it was held unconstitutionally overbroad. *Id.* On the other hand, Board Policy 4000.3 and Administrative Regulation 4000.3(1)(a), by limiting the definition of workplace violence to "verbal threats . . . which interfere[ ] with employee's safety in the workplace," survived the facial challenge. *Id.*

If a law proscribing threats containing violent "overtones" is invalid, then a statute providing no guidance on the threats it covers is likely invalid as well. *See also Lewis*, 415 U.S. at 132–34, 94 S.Ct. 970 (holding overbroad a statute making it unlawful for a person "wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to" police officers where the Louisiana Supreme Court declined to refine or narrow these words).

In light of the above discussion, at this time it appears to us that NRS 199.300(1)(b), by not defining the terms "threat" or "intimidation," is likely both overbroad and vague in violation of the First and Fourteenth Amendments to the United States Constitution.

## C. Certification of Question

▇▇▇▇ When asked to rule on the facial constitutionality of a state law, in addition to the language of the challenged statute itself a federal court must consider decisions of the state's highest court construing the statute. *Nunez*, 114 F.3d at 942. While we are not bound "to the state court's analysis of the constitutional effect of that construction . . . we must accept a narrowing construction to uphold the constitutionality of an ordinance if its language is readily susceptible to it." *Id.* (internal citations and quotation marks omitted). Our research does not yield an interpretation of NRS 199.300(1)(b) by the Supreme Court of Nevada. Nonetheless, we believe the statute is readily available to a narrowing construction. *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1147 (9th Cir.2001) (citing *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988)) ("[B]efore invalidating a state statute on its face, a federal court must determine whether the statute is 'readily susceptible' to a narrowing construction by the state courts.").

▇▇▇▇ We must exercise caution in determining the constitutionality of a state law where the state's highest court has not interpreted its meaning. *Nunez*, 114 F.3d at 939. As the court explained in *Cal. Prolife Council Political Action Comm. v. Scully*, 989 F.Supp. 1282, 1288 (E.D.Cal. 1998), a district court in such a situation has several options: (1) abstention;[7] (2) certification of a question to the state's highest court; and (3) decision on the merits notwithstanding the absence of a nar-

---

**7.** In *Scully,* the court was speaking of the type of abstention announced by the Supreme Court in *R.R. Comm'n of Tex. v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Scully,* 989 F.Supp. at 1288. Such abstention is not applicable here, and, in any case, has to a large extent been replaced by the more efficient certification process. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 75–76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997).

rowing construction. We believe the second option presents the most prudent course of action in this case. "[T]o warrant district court certification, 'it is sufficient that the statute is susceptible of an interpretation that would avoid or substantially modify the federal constitutional challenge to the statute.'" *Arizonans for Official English v. Arizona,* 520 U.S. 43, 77, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (quoting *Bellotti v. Baird,* 428 U.S. 132, 148, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976)) (internal brackets and ellipses omitted).

As a federal court, we are in no place to narrow the construction of the terms "threat" and "intimidation" as used in NRS 199.300(1)(b). *Cal. Teachers Ass'n,* 271 F.3d at 1146. We therefore do not intend our above discussion to convey an opinion as to the substance of any possible narrowing construction the Supreme Court of Nevada may provide. Neither do we suggest that the provision of a narrowing construction would be proper. Rather, we simply seek guidance from the Supreme Court of Nevada on the proper definition of the terms at issue. In addition, our phrasing of the question and issues presented should not restrict the Court's consideration of the issues. *S. Cal. Edison. Co. v. Lynch,* 307 F.3d 794, 813 (9th Cir. 2002).

In light of the above analysis, we respectfully certify the following question to the Supreme Court of Nevada: What conduct or speech constitutes a "threat" or "intimidation" punishable under Nevada Revised Statute 199.300(1)(b)? In other words, what is the definition of the terms "threat" and "intimidation" as used in Nevada Revised Statute 199.300(1)(b)?

## III. Names of Plaintiff and Defendants

Plaintiff:

Carol L. Chaffee

Defendants:

David Roger, Clark County District Attorney

Las Vegas Metropolitan Police Department

Amicus Curiae:

State of Nevada

## IV. Names and Addresses of Counsel for Plaintiff and Defendants

Plaintiff:

Carol L. Chaffee, *pro se*

117 Whittier Street

Idaho Falls, ID 83402–2206

(208) 709–5355

Defendants:

Michael L. Foley

Clark County District Attorney's Office—Civil Division

P.O. Box 552215

Las Vegas, NV 89155–2215

(702) 455–4761

Amicus Curiae:

Brian Sandoval—Attorney General, State of Nevada

By: Gerald J. Gardner—Chief Deputy Attorney General

555 East Washington Avenue, Suite 3900

Las Vegas, NV 89101

(702) 486–3396

## V. Other Relevant Matters

The Court requests that the parties to this action be provided an opportunity to brief this certified question pursuant to Nevada Rule of Appellate Procedure 5(f).

*IT IS, THEREFORE, HEREBY ORDERED* that, in accordance with Nevada Rule of Appellate Procedure 5(d), the Clerk shall forward this Order to the Supreme Court of Nevada for its consideration and provide the original or copies of all or any portion of the record as may be

requested by the Supreme Court of Nevada.